Callie A. RUSSELL, Plaintiff-Appellant,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Respondent.

No. 56902.

Supreme Court of Missouri,
En Banc.

Nov. 12, 1973.

Gray, Friedman & Ritter, Charles E. Gray, St. Louis, for plaintiff-appellant.

Robertson, Ely & Wieland, Robert C. Ely, St. Louis, for defendant-respondent.

HENLEY, Judge.

This is an action under the Federal Employers' Liability Act for damages for personal injuries allegedly sustained by plaintiff as a result of a collision of a freight car with an engine operated by him as defendant's employee. Verdict and judgment were in favor of plaintiff for $128,666. The trial court granted defendant a new trial for error in the giving of two instructions and plaintiff has appealed. This court has jurisdiction: the amount in dispute is in excess of $30,000 and the notice of appeal was filed before January 1, 1972. Article V, § 3, 1945 Constitution of Missouri, and schedule (§ 31, para. 4) to 1970 amendment of Article V, V.A.M.S.

The collision occurred on November 9, 1966. Defendant admitted liability for the collision but denied that the injuries producing the disability for which plaintiff sought damages were solely the result of this occurrence. In other words, defendant took the position that plaintiff's disability was wholly or in part the result of injuries

received in prior occurrences (one of which was a similar collision in December, 1965) for which it would not be liable.

One of the instructions for the giving of which the court granted defendant a new trial, is instruction No. 4, plaintiff's measure of damages instruction, as follows:

"If you find the issues in favor of plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence."

This is a MAI 4.01[1] verbatim. The trial court was of the opinion that it had erred in giving MAI 4.01 verbatim, because there was evidence of two prior occurrences or accidents in which plaintiff received injuries to the same general area of his body; that in these circumstances the "Notes on Use" applicable to this damage instruction required that it be modified "to substitute some descriptive term which * * * properly [would] limit the jury to the occurrence produced by defendant."

The following statement relative to the November, 1966, occurrence and injuries for which plaintiff seeks damages from defendant and the two prior occurrences in 1965, in which plaintiff received injuries, is, for the most part, taken from plaintiff's statement of the facts.

Plaintiff, age 43, testified that while employed by defendant as a locomotive engineer in Madison, Illinois on November 9, 1966, two freight cars were "kicked in" on the track on which his train was stopped and one collided with his engine. Following this incident he had sharp pains in the lower part of his back. The next morning he was stiff and sore and could hardly get out of bed; however, he did continue working for three days during which he was sore and stiff and had pain in the lower back and into the left leg. He then took a week's vacation but his pain increased and he returned home and went under the care of Dr. Walter Kelley, a chiropractor. Dr. Kelley testified that at his examination of plaintiff on November 18, 1966, he was bent over and could not stand erect and was in severe pain. The history given him by plaintiff was that he had an accident at work approximately one week before. At that time plaintiff had severe low back pain running down the left sciatic nerve. He administered four chiropractic treatments during the period of November 18, 1966 to December 29, 1966. On the last visit plaintiff was still complaining of low back pain. Plaintiff returned to work November 22 and worked until June 25, 1967. The pain kept getting worse so he entered the Missouri Pacific Hospital on June 26, 1967 and was hospitalized fifteen days. During this period of hospitalization a myelogram was performed which showed a minimal defect at L5-S1. Plaintiff was again hospitalized from May 12, 1969, to June 14, 1969, and he was operated on for a ruptured disc at the L5-S1 level. A discogram was performed showing defects at the L4 and L5 and L5-S1 level. He returned to work in October, 1969, but stopped working on January 25, 1970, because the pain in his back had become so severe he could not work. He reentered the hospital the next day and remained until February 8, 1970. He was again hospitalized during the period of March 23, 1970 to April 21, 1970, with the hospital records showing diagnosis of a herniated nucleus pulposus L4-5. A lumbo myelogram showed a very minimal indentation between L4-L5. He reentered the hospital May 19, 1970 and again underwent an operation with the post operative diagnosis being: slightly soft lumbar disc at L4-5. He testified at trial that he still has pain in his lower back and left leg and is unable to do anything because his back won't let him; that he is in constant pain. He has not worked since January 25, 1970.

1. *Missouri Approved Jury Instructions*, second edition, p. 29.

The hospital record entry of that date states he is still unable to work.

Dr. George Schoedinger, an orthopedic surgeon, examined plaintiff on November 25, 1969 and again on September 22, 1970 and last examined him November 10, 1970. It was his opinion that the accident of November 9, 1966 was the cause of the ruptured disc and the present pain in plaintiff's back and that plaintiff was unable to work.

Dr. George Hawkins, a neurosurgeon, testified that he examined plaintiff on November 16, 1970. He expressed the opinion that plaintiff was able to work as a locomotive engineer. He testified on cross-examination that assuming plaintiff had some occasional back pain prior to November 9, 1966, and that the myelogram made after the accident showed defects at L5–S1, it was his opinion that plaintiff would have sustained the ruptured disc on November 9, 1966. He further testified that if there was a negative myelogram following the 1965 accidents and a positive myelogram following the November, 1966, accident that does not automatically mean that the ruptured disc was the result of the latter, because plaintiff could have been hurt in both incidents and had more discomfort on the second; that the second incident either caused or made more severe a previous condition.

The two occurrences or accidents prior to November 9, 1966, which are relevant to the issues raised occurred in August and December, 1965. In August, 1965, while at home, he picked up a tool box, turned, and hurt his back. At that time he had pain in the low back down the right leg. He was hospitalized in Missouri Pacific Hospital from August 30 to September 28, 1965, and during that period traction was administered and a myelogram performed. The hospital record shows a diagnosis of "Low back syndrome. Possible disc disease. Spondylitis, lumbar and myelogram." The history showed "severe pain in low back radiating to leg and foot (right)." The myelogram was diagnosed as negative. On October 26, 1965, plaintiff went under the care of the same Dr. Kelley mentioned above. Plaintiff complained of pain in the low back radiating down the left leg following a course of the sciatic nerve. Dr. Kelley testified that his examination disclosed sacroiliac displacement on the left. He received seven treatments from Dr. Kelley up to November 27, 1965. At that time he was discharged from the doctor's care and okayed. Following the incident of August, 1965, he was off work approximately thirty-five days. In a deposition taken December 9, 1966, plaintiff testified that as a result of the incident at his home he had pain in his lower back down into his left leg.

The next incident occurred December 11, 1965, while he was at work in the railroad yards. In this accident he injured his neck and left shoulder. He was again hospitalized in the Missouri Pacific Hospital, this time from December 12 to 16, 1965. The hospital record shows a diagnosis of cervical sprain, spondylitis of the cervical and thoracic vertebrae. The final diagnosis was contusion and sprain of the lower and upper back. The history showed that he was injured when cars were kicked in on him and he was complaining of pain in the back between the scapulas and pain in the cervical region with restricted motion. After being discharged from the hospital he again went under the care of Dr. Kelley. Dr. Kelley first examined him on December 18, 1965, and at that time plaintiff complained of severe neck injury in the cervical area. Dr. Kelley testified that plaintiff had no complaints with reference to any other portion of his body. He remained under Dr. Kelley's care and was last examined by him prior to the accident in question on November 8, 1966, at which time he was still complaining of pain in his neck and shoulder. The next time Dr. Kelley examined him was on November 18, 1966, at which time plaintiff's complaints were in the low back area.

A lawsuit was filed April 27, 1966, against defendant to recover for the inju-

ries sustained in the incident of December 11, 1965 and that case was disposed of by settlement on May 2, 1967. In the original petition in that case the injuries alleged pertained to the cervical and thoracic spine. An amendment to that petition, filed March 28, 1967, alleged injuries to his entire spine, with a rupturing of the intervertebral discs and, more specifically, a wrenching, straining, and spraining of his lumbar spine and an aggravation of a preexisting arthritic condition thereof. In his deposition taken December 9, 1966, plaintiff testified that following the December, 1965, incident he was hospitalized for four days with pain in his upper and lower back; that he had pain in his lower back from the belt down his left leg; that the pain in his left leg developed while he was in the hospital; and that the pain in his lower back and left leg is constant and has continued so from the date of that incident through the date of the deposition. During the course of the trial, plaintiff testified that following the 1965 railroad accident he did not have pain down his left leg and had no pain in the lower back from the first accident; that the settlement he made for the first accident was for injuries to his neck and shoulders.

On cross-examination, Dr. Schoedinger confirmed that his direct testimony that plaintiff's present complaints were the result of the November 9, 1966, occurrence was based on an assumption that plaintiff experienced no pain in his lower back before that date. Asked to state his opinion based on an assumption that plaintiff did experience pain in his lower back and left leg in 1964 and 1965 and that it was constant and persisted from that date until December, 1966, without change in symptoms, the doctor stated that it is his opinion that plaintiff's complaints were caused by occurrences before November 9, 1966. He explained that his supposition that the injuries to the disc occurred prior to No-

vember 9, 1966 was based upon an assumption that the patient had continued to complain of pain from the date of his initial injury, whenever that was, and had been treated for it up until the time he had his other injury. However, if it were assumed that plaintiff was able to go back to work and had no further difficulty until the incident of November 9, 1966, he would say the opposite.

■ The main issue in the case was whether plaintiff's disability was the result of the occurrence of November, 1966, for which defendant would be liable, or the result of one or both of the prior occurrences of August and December, 1965, for which defendant would not be liable. It is clear from the above statement of facts that the jury could believe that plaintiff's injuries and damage were produced by all three occurrences mentioned in the evidence, or by any one alone, or by any two and not the other. In these circumstances it was mandatory that MAI 4.01 be modified in accordance with its Notes on Use (MAI, p. LIII) so as to limit the jury to a consideration of the results of the specific occurrence for which defendant was liable in determining the amount of compensation to award plaintiff.[2] Failure so to modify was error. Vest v. City National Bank and Trust Company, 470 S.W.2d 518 (Mo. 1971); Peak v. W. T. Grant Company, 409 S.W.2d 58, 60 (Mo. banc 1966); Homm v. Oakes, 453 S.W.2d 679, 681 (Mo.App. 1970); Jurgeson v. Romine, 442 S.W.2d 176, 177–178 [4, 5] (Mo.App.1969).

■ Plaintiff contends that even if it were error to fail to modify instruction No. 4, this was not prejudicial error requiring reversal. In an attempt to demonstrate that no prejudice resulted from the instruction as given, plaintiff asserts that the trial judge in his order sustaining defendant's motion stated, and the record makes it crystal clear, (1) that the issue as

2. For example: substitution of the words "of November 9, 1966" for the words "mentioned in the evidence" would have been sufficient modification of MAI 4.01 to meet the requirements of the Notes on Use.

to which occurrence caused plaintiff's injuries was sharply drawn throughout the case, (2) that it was difficult to see how the jury could have missed the main issue, and (3) that he did not believe the instruction misled the jury. Plaintiff argues that these statements by the trial judge constitute a finding that defendant was not prejudiced by the error. We do not agree that this constitutes a finding of no prejudice. We consider it a recognition by the trial judge that although he could not see how the jury could have missed the main issue and did not believe the instruction misled the jury, he had no way of knowing, and did not know, what effect the erroneous instruction had. This was no less than a finding that prejudice could have resulted. As to the statement in the order that the issues were sharply drawn, the order further stated that "[i]t can be argued that this is all the more reason why the [i]nstructions should have properly limited the jury to the occurrence of November 9, 1966 * * *." This is no less than a recognition that because the jury could have awarded damages for injuries resulting from an occurrence for which defendant was not liable, the only way to preclude prejudice to defendant would be to limit explicitly its consideration to the one and only occurrence for which defendant would be liable. As indicated, we have the view that neither the court's order nor the matters referred to therein demonstrated that the error was not prejudicial.

■ Plaintiff refers to the fact that the trial court, in ruling on the motion for new trial, overruled defendant's specification of error that the excessive verdict rendered indicated that the jury awarded damages for occurrences other than that of November, 1966, and from this he argues that the ruling constituted a finding by the court that defendant was not prejudiced by the erroneous damage instruction. We do not agree that this argument logically follows from the court's order. The court may have considered that the verdict was not excessive for injuries sustained solely as a result of the November, 1966, occurrence; yet that does not mean that the jury did so, or that it could not have, under the evidence, determined that that occurrence produced little or no injury and the prior occurrences produced some or all of the injury. If the jury did so determine, the damages assessed by it were, at least in part, for occurrences for which defendant was not liable.

■ Plaintiff also contends and argues that no prejudicial error could have resulted from the giving of instruction No. 4, because instruction No. 3, defendant's verdict director, limited the jury's consideration to "the occurrences of November 9, 1966." We cannot say that the limitation in defendant's verdict director rendered harmless or corrected the error in the plaintiff's damage instruction. We hold that it did not. The effect is that the two instructions conflict. Plaintiff has failed to demonstrate clearly that no prejudice could have resulted from the failure to modify the instruction in accordance with the Notes on Use of MAI 4.01. Brown v. St. Louis Public Service Company, 421 S. W.2d 255 (Mo. banc 1967); Chappell v. City of Springfield, 423 S.W.2d 810, 812 [3] (Mo.1968).

■ Plaintiff's last point is that the Notes on Use for MAI 4.01 are applicable and require modification of the instruction only where there is evidence that two different occurrences combined to produce the injury with defendant being responsible for only one; that defendant's only contention was that plaintiff could have sustained his injury in the occurrences prior to November 1966, *or* in the occurrences of that date, an either/or position, but that it did not contend that the resulting injury was caused by a combination of the November, 1966, occurrence and the prior occurrences. We do not agree that the MAI 4.01 Notes on Use require modification of that instruction only in the limited situation contended for by plaintiff. The purpose of the requirement that the instruction be modified

where more than one occurrence is mentioned in the evidence is to confine and limit the jury in assessing damages to a consideration of only the injury arising out of the occurrence for which defendant would be responsible. The Notes on Use require modification not only where two occurrences combine to produce the result, as contended by plaintiff, but they also require modification where there is evidence of two different occurrences, either one of which alone could have produced the resulting injury, for only one of which defendant is responsible. Vest v. City National Bank and Trust Company, supra. Plaintiff's point is without merit.

Since the order granting a new trial for error in the giving of instruction No. 4, must be affirmed and the cause remanded, we need not, and do not, rule whether instruction No. 2, plaintiff's verdict directing instruction, was also erroneous. That instruction told the jury that "your verdict must be for plaintiff if you believe that plaintiff sustained damages as a direct result of *the occurrence mentioned in the evidence.*" (emphasis supplied). This instruction is not in MAI. It is brief, simple, and impartial and in these respects it complies with Rule 70.01, V.A.M.R. However, the plaintiff would be well advised to consider before the next trial defendant's objections to it at this trial and the trial court's view (which we share) that this instruction also should have used some descriptive term to limit the jury to the occurrence produced by defendant.

The order granting a new trial is affirmed and the cause is remanded to the trial court.

PER CURIAM:

The foregoing opinion by HENLEY, J., is adopted as the opinion of the Court en Banc.

DONNELLY, C. J., and HOLMAN, HENLEY, and FINCH, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

MORGAN, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in dissenting opinions of SEILER, J., and MORGAN, J.

SEILER, Judge (dissenting).

As the majority opinion points out, it is important that the courts and the bar comply with the MAI Notes on Use. However, it seems to me that there was in effect full compliance in this case. I have reference to the following:

Instruction No. 3 in this case provided as follows:

"Your verdict must be for defendant if you believe that plaintiff was not injured as a result of the occurrence on November 9, 1966."

Instruction No. 4 in this case provided as follows:

"If you find the issues in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence."

It will be noted that instruction No. 4 refers to "the occurrence". Use of the definite article "the" limits "occurrence" to a specific, particular, single occurrence. It does not permit several occurrences or a combination thereof.

Between the two therefore, the jury was left with no uncertainty or conflict. The jury approaches instruction No. 4 knowing from reading instruction No. 3 that unless plaintiff was injured in the November 9, 1966 accident they cannot find for plaintiff. Then in reading No. 4 the jury sees that it refers to a single occurrence—"the occurrence". So they could not believe they could allow any damages for the August or December 1965 occurrences, because before the jury can award any damages they must find plaintiff was injured in the November 9, 1966 occurrence (see

instruction No. 3) and No. 4 requires them to focus on a single occurrence. Therefore, since under No. 3 plaintiff has to be hurt in the November 9, 1966 occurrence to recover, No. 4 necessarily is restricted to that occurrence and so was the jury.

In the cases cited by the majority opinion on the proposition that failure to modify MAI 4.01 by inserting the words "of November 9, 1966" for the words "mentioned in evidence" was reversible error, none involves a situation where there was in addition to MAI 4.01 another instruction given on the subject such as No. 3 in the present case. The cited cases do not consider the effect of such a given instruction. Rather, they focused on what a jury might consider from use of MAI 4.01 alone, without modification, in cases where there were several occurrences. For example, in Jurgeson v. Romine, 442 S.W.2d 176, 178 (Mo. App.1969), a case involving damage to growing crops from flooding where there was evidence that not all the flooding was due to defendant's act of obstructing the creek and the plaintiff used MAI 4.01 without modification, the court said:

". . . Does the word 'occurrence' refer to 'obstructing the creek' or to the 'flooding'? To which would a jury apply the word? We of course can't tell. Thus, the instruction is erroneous . . ." It does not seem to me that the same can be said of the words "the occurrence" in instruction No. 4 in the present case when read in connection with instruction No. 3. In deciding whether a jury would apply the words "the occurrence" to the August 1965 accident, the December 1965 accident, or the November 1966 accident, it seems to me that we quite positively can say that it was to the latter and to the latter alone.

It is true that MAI 4.01 was not modified by plaintiff. Instead the modification occurred in effect by defendant's instruction No. 3, but it does not seem to me that this procedure is a violation of the Notes on Use under MAI 4.01. So long as the instructions properly limit the jury to the occurrence produced by defendant it should make no difference whether the modification is made by one side or the other.

MORGAN, Judge (dissenting).

I respectfully dissent.

The instructions given by the court could not have confused an average jury; and, in reference to this particular jury, the trial court declared in its order granting a new trial that " . . . the court does not believe that the jury was misled . . . ." However, a new trial was ordered on the predicate that the "Notes on Use" reference MAI 4.01 were not complied with. Such notes call for modification of the printed instruction, where there is evidence of "two different occurrences," by adding "some descriptive term" to limit the jury's consideration to the specific occurrence from which the alleged damages flowed. For purposes of this dissent, it will be assumed that compliance would have necessitated only the addition of the date of November 9, 1966, under any view of the facts. However, such a modification is not mandatory in all cases involving claimants that might have had some pre-existing condition or have suffered some traumatic experience, as is true of most plaintiffs, but only where there is reason to believe a jury may be confused as to the issue it must decide. The record makes it abundantly clear that the cause was fairly tried by skilled counsel on both sides. Each of them, from voir dire to closing statement, precisely delineated the question, i. e., what damage did plaintiff suffer on November 9, 1966? In fact, the trial court in its order specifically found that the "issue was sharply drawn throughout the case."

This case does not involve an unauthorized deviation from a mandatory instruction as was done in Brown v. St. Louis Public Service Co., 421 S.W.2d 255 (Mo. Banc 1967), nor does it involve a "Notes on Use" that would be compulsory in certain well defined circumstances. To the

contrary, the notes following MAI 4.01 allow for alternative possibilities, dependent upon the facts. The propriety of the alternative chosen must be resolved on a basis of prejudice or no prejudice. The trial court, as noted, found that there was none.

Furthermore, the adoption of approved instructions did not abolish all of the existing law pertaining to instructions. The MAI approved book under the caption "Annotations To How To Use This Book," has a sub-title "Old Principles Still In Force" at page LIX. Thereunder, subparagraph No. 9, entitled "Clarifying Instructions" reads:

"Party deeming instruction insufficient should offer clarifying instruction at trial. State v. Campbell, 433 S.W.2d 606 [7, 8] [Mo.].

Where instruction (Modified MAI 13.05, defining agency) was unclear, but not erroneous, opponent should offer clarifying instruction to preserve error. Tietjens v. General Motors Corp., 418 S.W. 2d 75 [9] [Mo.].

Generality in plaintiff's MAI 4.01 cured by defendant's failure to offer a more specific damage instruction. Miller v. Ranson & Co., 407 S.W.2d 48 [11] [Mo.]."

See also Boten v. Brecklein, 452 S.W.2d 86, 93 [11–13] (Mo.1970), and Crawford v. Smith, 470 S.W.2d 529, 533 [9] (Mo. Banc 1971).

The instruction given by plaintiff, which was MAI 4.01, did not misdirect the jury; and, if defendant thought it should have been more specific, the law clearly placed the burden on it to request a clarifying instruction. Its failure to make such a request constituted a waiver of any right to make a later complaint.

In addition, it appears that defendant elected to give its own limiting instruction (No. 3) to specify the date of November 9, 1966. Instructions are to be read together, and defendant had the benefit of any limiting instruction thought necessary. Technical errors, if one reasonably did occur in this case, should not call for the expense of retrial of a cause fairly tried and fairly submitted in the first instance.

Since the majority opinion will be the law, I would recommend that MAI 4.01 be corrected to require the date of the event in question in all damage instructions. Only by doing that can we avoid placing all plaintiffs in the quandry of fearing an unlawful deviation by adding a date or reversal if they do not.