**Samuel A. GOODWIN,**
**Plaintiff-Respondent,**

v.

**S. J. GROVES & SONS COMPANY,**
**Defendant-Appellant.**

No. 36209.

Missouri Court of Appeals,
St. Louis District,
Division Three.

June 10, 1975.

Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendant-appellant.

Gregory D. O'Shea, Lemay, for plaintiff-respondent.

SIMEONE, Presiding Judge.

This is an appeal by defendant-appellant, S. J. Groves & Sons Company from a judgment entered on April 3, 1974, by the circuit court of Ste. Genevieve County in favor of the plaintiff-respondent, Samuel A. Goodwin in the amount of $5,000 for damages to respondent's home caused by blasting operations conducted by the defendant-appel-

lant. For reasons hereinafter stated, we affirm the judgment.

Since appellant, S. J. Groves & Sons Company makes only one point on this appeal—that the court erred in giving Instruction No. 4,[1] the damage instruction—it is unnecessary to detail all of the facts brought out at trial. We shall state only those facts necessary for the disposition of appellant's contentions.

Mr. Samuel Goodwin acquired ownership of his home on January 5, 1971. He moved into the house sometime in February, 1971. He purchased the property from one Jim Gibson. During December, 1970, he and Mr. Gibson were "batching" there. Prior to January 5, 1971, and subsequent thereto, S. J. Groves & Sons Company was engaged in the project of constructing Interstate Highway 55 in the County. In the course of the construction, it performed certain blasting operations to remove rock for the highway right-of-way. In the course of the construction, appellant Groves Company would drill and set off explosives at different sites and at different times. Blasting occurred on several occasions. There were two occasions in December, 1970—December 7 and 9—which took place within approximately 350 to 450 feet of the plaintiff's home, and there were seven occasions in March, 1971, at approximately 130 feet from the home.

Before Mr. Goodwin purchased the property in January, 1971, he inspected it. He looked over the basement, the concrete block foundation, the fireplace and other parts of the house. "The house was well-constructed. I couldn't see anything wrong with it, period." There were no cracks in the foundation, the fireplace was "perfect," the plumbing worked, and the "house was in good shape, as far as I was concerned."

At one point during the March explosions, Mr. Goodwin was "knocked to the ground." After the March explosions, according to Mr. Goodwin and other witnesses for the plaintiff, there was damage to various portions of his house. The foundation was cracked (in the opinion of one witness—"fractured"), the mantle of the fireplace was cracked, the front porch was cracked in two places, the ceiling tile had to be replaced, there were problems with the well, the line to the septic tank was ruptured and the doors and door frames had to be cut because the floor settled.

A professional engineer testifying for the plaintiff, Mr. Goodwin, testified that the damages were due to the blasting operations in March, 1971. Mr. Goodwin purchased the home for $9,700 and estimated that because of the damage it decreased in value some $6,000.00 to $7,000.00. Several neighbors testified for the plaintiff. The thrust of their testimony was that they also suffered some damage, but one neighbor noticed his damage in December, 1970.

The defendant's defense was mainly based on the proposition that the blasting in March did not likely cause the damage, because the method of blasting—a series of "delays"—and the contour of the land were such that it was unlikely that damage to the plaintiff's house was the result of the March explosions. One of defendant's witnesses testified that he didn't think the March explosions "would" cause the damage.

The trial court gave certain instructions. Instruction No. 2,[2] plaintiff's verdict directing instruction, informed the jury that the verdict must be for the plaintiff if you believe that "defendant exploded ammonium nitrate and other high explosives after

---

1. INSTRUCTION NO. 4: "If you find the issues in favor of plaintiff, then you must award the plaintiff such sum as you may find from the evidence to be the difference between the fair market value of the property in evidence before it was damaged and its fair market value after it was damaged."

2. INSTRUCTION NO. 2: "Your verdict must be for plaintiff if you believe: First, defendant exploded ammonium nitrate and other high explosives *after January 5, 1971* and Second, as a direct result of such explosion, plaintiff was damaged." (Emphasis added.)

*January 5, 1971*" and as a direct result plaintiff was damaged. (Emphasis added.) Instruction No. 3, given at the request of the defendant, informed the jury: "Your verdict must be for the defendant unless you believe that plaintiff sustained damage from explosions occurring after January 5, 1971." The court also gave Instruction No. 4, the damage instruction (MAI 4.02). This instruction did not specify any date, but told the jury that if the issues were found in favor of the plaintiff, then it must award "such sum as you may find from the evidence to be the difference between the fair market value of the property . . . before it was damaged and its fair market value after it was damaged."

The jury returned a verdict in favor of the plaintiff, Goodwin, in the amount of $5,000.00. The defendant Groves Company duly appealed. On this appeal, defendant raises one point.

It contends that the trial court erred in giving Instruction No. 4 (MAI 4.02) "because the evidence revealed two separate occurrences which may have caused plaintiff's damage [defendant being liable for only one] and Instruction No. 4 does not limit the assessment of damages to that one occurrence." In expanding on this point, defendant argues (1) that there was some evidence from which the jury could have found that part of the damage to the plaintiff's home occurred in December, 1970, when two explosions took place near the property of the plaintiff, (2) that in situations under MAI 4.01 where more than one "occurrence" could account for the damages to the plaintiff, MAI 4.01 must be modified to substitute some descriptive term which will properly limit the jury to the occurrence produced by the defendant; therefore MAI 4.02 in similar situations must likewise be modified,[3] and (3) that MAI 4.02 must be

3. It is to be noted that the Notes on Use under MAI 4.01 require a modification where there is evidence that two different occurrences produced the injury with defendant being responsible for only one. "In such cases counsel will need to substitute

modified in such situations even though a verdict director limits the jury's consideration to the particular occurrence for which he seeks damage to his property.

Defendant relies on several decisions decided under MAI 4.01. *Russell v. Terminal Railroad Ass'n of St. Louis*, 501 S.W.2d 843 (Mo. banc 1973) [personal injury]; *Vest v. City National Bank and Trust Company*, 470 S.W.2d 518 (Mo.1971) [malpractice], and *Miller v. American Insurance Company*, 439 S.W.2d 238 (Mo.App.1969) [property damage]. See also *Jurgeson v. Romine*, 442 S.W.2d 176 (Mo.App.1969), and *Homm v. Oakes*, 453 S.W.2d 679 (Mo.App.1970). In these decisions it was held that where the jury could believe that injuries or damage were produced by several occurrences or where two or more occurrences combine, either one of which could have produced an injury for only one of which the defendant is liable, the damage instruction MAI 4.01 must be modified in accordance with the Notes on Use so as to limit the jury to a consideration of the results of the specific occurrence for which defendant was liable in determining the amount of compensation to award plaintiff. Failure to so modify is error. And this is true even though a defendant's verdict director limits the jury's consideration to the occurrence for which the defendant may be held liable. *Russell v. Terminal Railroad Ass'n of St. Louis, supra*, 501 S.W.2d at 848.

Defendant argues therefore that where there is evidence of one or more occurrences, singly or in combination which occasion property damage to the plaintiff, the damage instruction MAI 4.02 must also be modified as required under MAI 4.01.

■ It is, of course, true that a plaintiff may not recover damages to his property which occurred prior to the purchase unless

some descriptive term which will properly limit the jury to the occurrence produced by defendant." Notes on Use to MAI 4.01. There is no comparable language in MAI 4.02, Measure of Damages—Property Only.

that right has been assigned. 92 C.J.S. Vendor and Purchaser § 318b(2), p. 209 (1955); *Hoffmann v. City of Columbia*, 76 Mo.App. 553 (1898).

> "If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and, if the evidence leaves it to conjecture, the plaintiff must fail in his action." *Warner v. St. Louis & M. R. R. Co.*, 178 Mo. 125, 77 S.W. 67, 70 (1903), quoted in *Miller v. American Insurance Company, supra*, 439 S.W.2d at 240.

We hold, however, that, under the facts of this case, the trial court did not err in giving the damage Instruction No. 4, MAI 4.02, without modification, and hence affirm the judgment.

■ First, we perceive some differences between MAI 4.01 and MAI 4.02, MAI 4.01 [personal injuries and property damage] is framed in terms of damages suffered as a "direct result of the *occurrence* mentioned in the evidence." Obviously, if the evidence reveals several occurrences which may have caused damage, the Notes on Use properly require a modification in order to substitute some descriptive term which will properly limit the jury to the occurrence produced by the defendant. This is the thrust of the holdings relied upon by the defendant— *Russell, Vest, Miller, Jurgeson* and *Homm.*

But MAI 4.02 is not framed in terms of damages suffered as a direct result of the *occurrence* (it does not use the word "occurrence") but rather it is framed in terms of the difference between the fair market val-

ue before and after the property was *damaged*. It is significant that there is no such requirement of modification in the Notes on Use as exists in the Notes under MAI 4.01. If the evidence shows multiple causation, the precise damages for which the defendant may be held liable may be explained to the jury in other instructions so that the jury is limited to a consideration of the damage suffered for which the defendant may be liable.[4]

We cannot say that the trial court erred in giving Instruction No. 4 without modification especially in view of the admonition of Rule 70.01(b), V.A.M.R., that where an MAI instruction is applicable, it shall be given to the exclusion of all others.

Second, even if it could be argued that MAI 4.02 should be modified in a particular multiple causation case, we are convinced that under the facts here, the trial court did not err in giving Instruction No. 4. The plaintiff's verdict director, Instruction No. 2, informed the jury that the verdict must be for the plaintiff "if you believe: First, defendant exploded . . . explosives *after January 5, 1971* and Second, as a direct result of such explosion, plaintiff was damaged." (Emphasis added.) The defendant's converse also told the jury that the verdict must be for the defendant "unless you believe that plaintiff sustained damage from explosions occurring after January 5, 1971." Instructions Nos. 2 and 3 therefore limited the incidents to those occurring after the plaintiff purchased the property.

■ Before reversible error can be predicated on the giving of MAI 4.02, the defendant need show that it was a misdirec-

---

4. In *Kelso v. C. B. K. Agronomics, Inc.*, 510 S.W.2d 709, 726 (Mo.App.1974), the Kansas City District stated that MAI 4.02 does not use the word "occurrence" and then said:
   "The fact remains, however, that this instruction, MAI 4.02, is the only instruction which states the rule for permanent damage to real property under the existing case law. . . . What has been said thus far is not intended as an expression of approval of the use of MAI 4.02 in any negligence case where an issue of multiple causation, in fact, exists. It would appear that in such cases MAI 4.02 should be so modified as to require the jury by its findings to separate or apportion the damages directly resulting from the negligence of the defendant."

tion under all the evidence and the other instructions. It is axiomatic that all the instructions are to be read together. We believe that when the instructions are read together the jury could not have been misled. Instructions Nos. 2 and 3 limited the plaintiff to recovery for injuries sustained after January 5, 1971; each instruction specified a time. When the instructions are read together we believe that the jury was limited to those damages occurring after January 5, 1971, the date the plaintiff purchased his property, thus precluding the jury from awarding damages which may have occurred prior to that date. Under these circumstances, therefore, we do not believe the jury could have been misled and was not authorized to award damages for explosions which occurred in December, 1970.

None of the decisions relied upon by the defendant is factually or legally identical to the issue here. None of the decisions indicates that the plaintiff's verdict director and the defendant's converse set out a specific period of time for which the defendant was liable for damage. Defendant places principal reliance on *Russell v. Terminal Railroad Ass'n of St. Louis, supra.* There are significant differences between the instructions given in *Russell* and those in the case at bar. In *Russell,* plaintiff's verdict director did not limit liability to a specific occurrence. Instead plaintiff argued that *defendant's* verdict director supplied the deficiency. In the case at bar, plaintiff's verdict director limited defendant's possible liability to blasts occurring after January 5, 1971, the date plaintiff purchased the property.

Also, *Russell* dealt with MAI 4.01, "Measure of Damages—Personal and Property," whose "Notes on Use" *require* the litigants to "substitute some descriptive term which will properly limit the jury to the occurrence produced by defendant." A continuing theme of cases on this issue is based in large measure on the admonition in MAI that the Notes on Use "must be followed."

See, e. g., *Homm v. Oakes, supra,* 453 S.W.2d at 681, and cases cited therein. The case at bar deals with MAI 4.02, "Measure of Damages—Property Only." There are no "Notes on Use" relating to separate occurrences that must be "religiously followed."

Therefore, under all the evidence and the instructions given, we cannot conclude that the trial court erred in giving Instruction No. 4.

Third, we believe that the decisions relied upon by the defendant are not dispositive of the issue here. This cause is more akin to *Kelso v. C. B. K. Agronomics, Inc., supra.* There plaintiffs, owners of farm real estate, sought damages to their farms as a result of flooding allegedly caused by the construction of a concrete structure used as a bridge. A damage instruction—MAI 4.02— was given. The defendant claimed that the instruction did not advise the jury how the damages were to be apportioned among the various causes of flooding. Defendant claimed that there were two or more causes of damage suffered by the plaintiffs and the jury was not properly instructed so as to isolate the damages from each cause. Defendant relied on *Vest v. City National Bank and Trust Company, supra,* and *Miller v. American Insurance Company, supra,* which held that the word "occurrence" in MAI 4.01 was error where there were two occurrences for only one of which the defendant would be held liable. The Kansas City District in *Kelso* held that the giving of MAI 4.02 was not error under the circumstances. The plaintiff's evidence was such that recurring floods had never, prior to the construction, caused the damages now complained of. The court went on to state that it was apparent that a flood would cause some damage, but that the plaintiff's evidence on the causation factor of the damages claimed was confined to the cause mentioned.

So too in this case. The theory upon which the plaintiff's case was tried was

that there was damage to the plaintiff's home as a result of the explosions in March, 1971, rather than in December, 1970. The expert witness for the plaintiff testified in answer to a hypothetical question that the damages were caused from the March explosions. The daughter-in-law of plaintiff's wife testified that immediately after one explosion in March, while she was cleaning the living room, a crack was noticed in the mantle of the fireplace. The neighbors, except one, noticed cracks in March, April or May, 1971. Mrs. Goodwin, who was not married to plaintiff until April, 1971, while cleaning the house in March and on the day of one of the explosions in March, noticed the fireplace was cracked. The plaintiff testified that on one occasion in March he was knocked to the ground. The plaintiff examined the home fairly carefully before he purchased it in January, 1971. The damages were found to exist after the explosions in March. Witnesses for the plaintiff indicated that the damage to the fireplace, porch and other parts of the house took place in March, 1971. The defendant's expert witness testified as to the explosions in March that he didn't "think it would" cause damage to plaintiff's house.

From all the evidence, we believe it to be sufficiently clear that the damages to the plaintiff's house were caused by the explosions which occurred after January, 1971, and that this does not present a situation as in *Russell v. Terminal Railroad Ass'n of St. Louis, supra.*

For the foregoing reasons, we hold that the trial court did not err in these circumstances in giving Instruction No. 4, and we therefore affirm the judgment.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.