Margie McGOWAN, Respondent,

v.

Gerald C. HOFFMAN, Appellant.

Mary F. BAUGH, Respondent,

v.

Gerald C. HOFFMAN, Appellant.

No. KCD 30104.

Missouri Court of Appeals,
Western District.

Nov. 3, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 2, 1980.

Application to Transfer Denied
Jan. 13, 1981.

Thomas A. Sweeny, John M. Klamann, Popham, Conway, Sweeny, Fremont & Bundschu, P. C., Kansas City, for appellant.

Arthur H. Stoup, Stewart M. Stein, Stoup & Bohm, Kansas City, for respondents.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SWOFFORD, Judge.

This appeal arises from actions for damages for personal injuries alleged to have been sustained by the plaintiffs in a "rear end" automobile collision which occurred on September 4, 1973, between an automobile occupied by the plaintiffs (McGowan riding as a passenger, and Baugh, the driver) and an automobile operated by the appellant, Hoffman. The cases were consolidated for trial in the court below. The consolidated case was tried before a jury and resulted in separate verdicts in favor of McGowan in the sum of $27,500.00, and in favor of Baugh in the amount of $17,000.00. After Hoffman's unavailing motion for directed verdict and for a new trial, he timely appealed to this Court.

The facts as to negligence and liability were not in substantial dispute and, considered in a light most favorable to support the judgments, may be briefly stated. Just before the collision, Baugh was driving her Pontiac automobile with McGowan riding as a passenger in a southerly direction on Charlotte Street in Kansas City, Missouri near its intersection with Truman Road. At that location Charlotte carries only southbound traffic and intersects Truman Road, which carries both eastbound and westbound traffic, at approximately right angles. The Charlotte Street and Truman Road intersection is controlled by traffic signals which required the Baugh automobile to stop at the intersection. Several seconds after coming to a stop, the Baugh automobile was struck from the rear by Hoffman's Ford automobile. The force of this impact knocked the Baugh vehicle forward about 2½ car lengths from its stopped position. The Ford was being driven at the time by Hoffman and at the scene, it was

observed that his speech was slurred and somewhat incoherent, there was a strong odor of alcohol about the Ford, and Hoffman; he refused to show his driver's license to Baugh; he moved his car stating he wanted to park it in front of the Baugh automobile; he then left the scene of the accident, almost hit a lamp post and "zigzagged" away "fast" down Charlotte before the police arrived. However, McGowan had taken down his car license number and he was later contacted by the police and admitted his involvement in the collision, but stated to Officer Pringle of the Hit–and–Run Unit of the police department that he had suffered head and internal injuries. The front end of his Ford was damaged, but he did not recall "what had happened." He later entered a guilty plea to a careless driving charge. He did not testify at the trial and, in fact, no evidence of any kind was offered by the defense.

Baugh testified that she observed no lights on the Ford either before the collision or as it was driven away from the scene, although it was dark at the time of the collision. Both McGowan and Baugh sustained personal injuries, which will be discussed hereafter.

The appellant raises three points on this appeal, which may be thus summarized: (I) The court erred in giving Instruction No. 7 because a separate finding of injury as to each plaintiff was required, and separate damage instructions should have been given; (II) The court erred in failing to grant a new trial or order a remittitur because the verdicts are against the weight of the evidence and are excessive; and (III) That the court erred in failing to grant a new trial because the verdicts are so excessive as to indicate bias and prejudice on the part of the jury.

Directing attention to Point I, the Instruction No. 7 complained of is a damage instruction which reads:

"INSTRUCTION NO. 7

If you find the issues in favor of the *plaintiffs*, then you must award the *plaintiffs* such *sum* as you believe will fairly and justly compensate the *plaintiffs* for any damages you believe *they* sustained and are reasonably certain to sustain in the future as a direct result of the occurrence mentioned in evidence.
MAI 4.01" (Emphasis supplied)

The appellant argues that this instruction misled and misdirected the jury and compelled them to conclude that they must find and return verdicts for neither of the plaintiffs or both of them, and could not return a verdict for one and against the other. The appellant cites several decisions and an MAI Committee Comment which is supportive of the view that where there is a joint action by plaintiffs whose claims are governed either under the law or the facts in a given case by different measure of damages, that two separate damage instructions should be submitted. Appellant asserts that the failure to do so in this case constituted reversible error.

In the argument portion of his brief under Point I, the appellant states that this error was further compounded by a mistake in the burden of proof Instruction No. 2 because of the use of the term "claim" instead of "claims" and constituted obvious error which would further cause the jury to believe that "they either had to find for both of the plaintiffs or for neither of the plaintiffs". This alleged error of mistake in Instruction No. 2, it is to be noted, is not urged as an assignment of error in appellant's "Points Relied On" as required by Rule 84.04(d) V.A.M.R., but the argument has been noted.

The respondents answer Point I by the argument that to give two separate damage instructions in this case "would be an exercise in futility, since the two instructions would be needlessly identical" and would confuse rather than instruct a lay jury. This argument is apparently based upon the premise that the measure of damages as to each plaintiff is identical. Further, the respondents state that their counsel has found no reference to or requirement for such duplicate instructions under the facts in this case and thus, apparently, in uncertain terms asserts that no violation of the mandate of MAI is present.

It is apparent that the plaintiffs below modeled their Instruction No. 7 on the MAI 4.01 approved at the time this case was tried for a single plaintiff in a personal injury damage action. MAI 4.01 was modified in the case at bar by changing the singular submission "plaintiff" to "plaintiffs" and the singular submission "he" to "they". The term "such sum" as used in MAI 4.01 was retained. This modification of MAI 4.01 is the basis for the position of appellant that it was a violation of the MAI mandate and constituted presumptive error, Rule 70.02(c) V.A.M.R. Some support is found (at least by analogy) in the case of *Kennedy v. Tallent*, 492 S.W.2d 33, 37 (Mo. App.1973). *Kennedy* involved an automobile collision in which a wife and a child were injured. They and the husband–father joined in a multi–count suit as plaintiffs. The wife sued for damages for her personal injuries, as did the child for her injuries. The wife–mother and husband–father sued for damages for property damage, business losses, medical expenses for daughter, and the husband's loss of his wife's consortium. Five separate damage instructions were submitted to the jury, which submission was approved on appeal, the court stating, l.c. 37[4]:

"All the claims for personal injury had elements in common, but each plaintiff was required to show individual, distinct injury as a prerequisite to the recovery of any sum as damages for personal injury."

The *Kennedy* court also cited the Committee Comment to MAI 35.05, an illustrative set of instructions for the situation involving personal injury and a separate consortium claim, wherein at page 407, it is stated:

"While there is an unfortunate degree of duplication in the two damage instructions, *it would not be proper to combine them.* The jury might find for the wife and also find that the husband had not been damaged as a result of the occurrence. *To imply that injury to the wife meant injury to the husband would be error.*" (Emphasis added)

The *Kennedy* case is distinguishable factually from the case at bar in that there, the court approved the use of multiple damage instructions, and *Kennedy* involved claims each calling into play different legal measures of damage. Furthermore, the part of the opinion in *Kennedy* to which reference is above made was dicta.

Even assuming that Instruction No. 7 herein violates the mandate or spirit of MAI as asserted by the appellant, the duty of this Court on this appeal is much broader in scope than to peremptorily so conclude. This Court's review here is defined as to scope by Rule 70.02(c) V.A.M.R., which provides:

"(c) *Violation of Rule–Effect.* The giving of an instruction in violation of the provisions of this Rule shall constitute error, *its prejudicial effect to be judicially determined.* * * * " (Emphasis added)

Even if the initial conclusion is reached that error has occurred in the giving of Instruction No. 7, the duties of this Court in this case are not ended.

The Supreme Court of this state with laudable intent and worthy and efficient aspiration adopted MAI and ruled so as to enforce upon the bench and bar a very strict code of restriction by and compliance with its mandatory use, all of which has effected a vast savings in judicial time and taxpayers' money. But the gate of restriction and compliance must in the interest of fundamental justice be left somewhat ajar. Thus, from the consistent and binding decisional law, since the adoption of MAI and Rule 70.02, the principle has evolved that courts faced with violations or impermissible modifications of MAI must gauge the prejudicial effect thereof. Such defect in submission of a case must be shown to be non–prejudicial before it can be given. It appears to this Court that it must be shown, and the judicial mind and conscience satisfied by means of some positive force of fact or logic, that no "prejudicial effect" has resulted from the erroneous instruction. The burden to make this showing rests upon the party offering the instruction.

The Missouri Supreme Court in *Brown v. St. Louis Public Service Co.*, 421 S.W.2d 255, 259[3] (Mo.banc 1967), and in *Murphy v. Land*, 420 S.W.2d 505, 507[3–7] (Mo.1967), adopted the rule regarding deviations from the straight and narrow path prescribed by MAI that "prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from the deviation." The requirements of MAI are mandatory. The burden of establishing nonprejudice is on the proponent of the instructions. All districts of this Court have adopted and followed this *Brown–Murphy* rule. See: *Snyder v. C.R.I. & P. Ry. Co.*, 521 S.W.2d 161, 164[6–7] (Mo.App. 1973); *Long v. REA Express Company*, 573 S.W.2d 62, 66[6] (Mo.App.1978); *Watterson v. Portas*, 466 S.W.2d 129, 132[5, 6] (Mo. App.1971); *Jenkins v. Jordan*, 593 S.W.2d 236, 240[11] (Mo.App.1979). See also, *Means v. Sears*, 550 S.W.2d 780, 786[1] (Mo. banc 1977); *Crystal v. Home*, 525 S.W.2d 317, 321–322[4] (Mo.banc 1975).

The record before this Court clearly demonstrates that the giving of Instruction No. 7 did not mislead the jury, as claimed by the appellant, and that Instruction No. 7 was harmless error and nonprejudicial.

It is well established in the history of the law of this state that instructions are considered as a whole, *Goodwin v. S. J. Groves & Sons Co.*, 525 S.W.2d 577, 582[4] (Mo.App.1975), and as being given to and considered by jurors of reasonable intelligence, *Deskin v. Brewer*, 590 S.W.2d 392, 401[19–21] (Mo.App.1979).

The instructions, in addition to Instruction No. 7, quoted supra, which were given to the McGowan–Baugh jury in this case pertinent to the point now under consideration, were as follows (in all instances emphasis is supplied):

### "INSTRUCTION NO. 4

Your verdict must be for *plaintiff Mary (Frankie) Baugh* if you believe:

First, defendant's automobile came into collision with the rear of plaintiff's automobile, and

Second, defendant was thereby negligent, and

Third, as a direct result of such collision, *plaintiff* sustained damage.
MAI 17.16"

### "INSTRUCTION NO. 5

Your verdict must be for *plaintiff Margie McGowan* if you believe:

First, defendant's automobile came into collision with the rear of the automobile in which plaintiff was a passenger, and

Second, defendant was thereby negligent, and

Third, as a direct result of such collision, *plaintiff* sustained damage.
MAI 17.16"

### "INSTRUCTION NO. 6

Your verdict must be for defendant on *plaintiffs' claims* for damages if you do not believe defendant was negligent as submitted in *Instruction Numbers 4 and 5* and that *plaintiffs* sustained damage as a direct result thereof.
MAI 33.02(5) Modified"

### "INSTRUCTION NO. 9

You are instructed that a *separate verdict must be returned with respect to each plaintiff.* \* \* \* " (Instruction No. 9 then sets forth the various forms of verdicts. MAI 36.08)

The verdict directing instructions (No. 4 and No. 5) clearly are each limited to a single plaintiff, and the defendant's converse (No. 6) refers to both of these and refers to plaintiffs' "claims". Further, the preliminary statement preceding the forms of verdict (No. 9) specifically advises the jury that they must return separate verdicts with respect to each of the plaintiffs, McGowan and Baugh.

In addition, there were numerous and constant trial references to the individuality of plaintiffs' claims, including the final arguments of trial counsel.

Any juror with any intelligence could not be confused or misled by these simple, plain directions.

The fact that this jury understood that the claims of the plaintiffs were to be considered separately, each on its own merits, and that it was not compelled toward any uniformity as to result, is made clear by the actual results which the jury reached. It returned a separate verdict in favor of Baugh in the amount of $17,000.00, signed by nine jurors. It returned a separate verdict for McGowan for $27,500.00 in which the same nine jurors were joined by a tenth. The difference in the amounts awarded is consistent with the medical evidence offered by each plaintiff. An additional factor for consideration is that the defendant did not offer any direct proof as to either liability or damages. These factors lead to the almost inevitable conclusion that the jury considered principally the elements of injury and damage applicable to each plaintiff separately, and in accordance with specific instructions returned separate verdicts.

While no case has been found which is factually identical to the case at bar, two decisions are worthy of note and give judicial illumination to the above general principles.

In the case of *Penn v. Columbia Asphalt Company*, 513 S.W.2d 679, 688–689[17–18] (Mo.App.1974), the trial court's order granting a new trial because of erroneous burden of proof and loss of consortium instructions was reversed by this court and verdicts for the plaintiff were reinstated. The suit involved a joint action by husband and wife for his personal injuries and her loss of consortium. The burden of proof instruction as originally given was cast in singular terms employing the words "plaintiff" and "his claim". When the instruction was read to the jury, however, it was read employing the terms "plaintiffs" and "their claims". The court held that the deviation was not reversible error, when the verdict directors, forms of verdict, contributory negligence instructions and numerous trial references could leave no doubt in the jurors' minds that separate claims by each plaintiff were being submitted. The court stated, l.c. 689:

"In these singular and limited circumstances, the failure of the written instruc-

tion on burden of proof to conform to the plural form was harmless error."

In the case of *Hampton v. Cantrell*, 464 S.W.2d 744, 750[2–4] (Mo.App.1971) a driver, his wife and son were all injured in an automobile collision. They joined in one action as plaintiffs for damages against the alleged tortfeasor and recovered separate verdicts. They offered only one verdict director instruction, which, it was argued, was reversible error because it improperly instructed the jury that all plaintiffs must win or all must lose. The appellate court rejected this argument in the light of the fact that the plaintiffs submitted separate damage instructions, and another instruction specifically advised the jury that separate verdicts must be returned as to each plaintiff. The court concluded that the jury was not confused or misled by the single verdict director and affirmed the judgments.

■ The conclusion is reached that Instruction No. 7 was not misleading or confusing and was non–prejudicial and did not constitute reversible error in the light of the whole record and the totality of the facts in this case. The appellant's Point I is ruled against him.

Appellant's Points II and III are both directed at the claim that the verdicts returned by the jury were excessive and that the trial court erred in failing to grant a new trial. Under Point II, the appellant claims in the alternative that the court should have ordered a remittitur because the verdicts were against the weight of the evidence because excessive. In the argument portion of his brief, he denominates this approach as "simple excessiveness". Under Point III, he charges that the verdicts were so excessive so as to indicate bias and prejudice on the part of the jury. In the argument portion of his brief he denominates this approach as "excessiveness by misconduct". Since both of these points deal with the same subject matter they must be considered together, and Point III will be first briefly addressed.

Appellant concedes in his brief the well recognized principle that a jury cannot be tarred with the brush of bias, prejudice or misconduct upon the sole basis of the size of the verdict returned. *Loveless v. Locke Distributing Company*, 313 S.W.2d 24, 33[13] (Mo.1958). There must be other error or occurrences which would, in addition to a large verdict, lead to a reasonable conclusion of bias or prejudice and that the jury deliberations were clouded and corrupted by reason thereof which resulted in misconduct exemplified by an excessive verdict.

The appellant seeks to fill this void by once again resorting to his claim of error in Instruction No. 7, above discussed. His position is that the giving of that instruction under the facts of this case when viewed together with the high verdicts leads to the "necessary conclusion that the jury was biased in making its award". This Court is led to no such conclusion. This Court has previously held in this decision that Instruction No. 7 was not, under the record facts in this case, even confusing or misleading to the jury and therefore non–prejudicial. Certainly it cannot be remotely or logically concluded that the instruction was such as to stir the emotions of the jury to a paroxysm of passion, bias or prejudice and thus corrupt its verdicts. No other untoward occurrence, trial incident, testimony, conduct of counsel, or other matter in the record before this Court is argued or apparent that could have impelled the jury toward misconduct. The trial court in post trial proceedings held otherwise. There is no merit to appellant's Point III.

The appellant's Point II is based upon the doctrine of "simple excessiveness" which, in turn, stems from the "doctrine of uniformity". He cites several cases dating from a number of years past as authority for his view that the verdicts herein are so excessive as to require a new trial or remittitur arguing that the approved verdicts in those cases for injuries somewhat similar to those involved here were below the verdicts of the jury here. He overlooks or disregards the present state of the Missouri law with regard to appellate review of verdicts claimed to be excessive. Two recent cases, one from this Court and the other from the Missouri Supreme Court en banc, denominate the present approach to review of judgments on this ground as the rule of reasonableness and fairness of which the former doctrine of uniformity is but one of a number of matters for appellate consideration. In *Ricketts v. Kansas City Stock Yards of Maine*, 537 S.W.2d 613 (Mo.App. 1976), this Court followed the formula of *Marczuk v. St. Louis Public Service Co.*, 355 Mo. 536, 196 S.W.2d 1000, 1007[17] (Mo. 1946) wherein the *Marczuk* court held that the only factors for appellate consideration were: (1) nature and extent of his injuries and losses; (2) diminished earning capacity; (3) some consideration to economic conditions; and (4) comparison of awards with the compensation awarded and permitted in cases of comparable injuries. This Court in *Ricketts*, stated, l.c. 619:

> "Clearly, by the time of the decision in *Marczuk*, the courts had adopted a test which included as *one* of the elements for determination of the propriety of a remittitur at the appellate level, but uniformity was not the *sole* determining factor. In addition to the factors set forth in the *Marczuk* language, *supra*, other cases have added as factors for consideration, the plaintiff's age, changing economic factors and a factor of deference to trial court and jury findings (cases cited). Thus, what has emerged from the case law is a standard of reasonableness of the verdict to be determined by the appellate court taking into consideration all of the various factors that the courts have recognized as affecting the issue of reasonableness and utilizing as only one of those factors the notion of uniformity with comparable injuries." (Emphasis the Court's)

The *Ricketts* court further stated, l.c. 619:

> "It is also a part of the remittitur doctrine that in making the evaluation of the reasonableness of the verdict the appellate court looks to the evidence most favorable to the verdict and does not, as the

defendant has obviously done in making the comparison in his brief, utilize the testimony which is unfavorable to the plaintiff's verdict in terms of injury proven (cases cited)."

In the case of *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 309[18] (Mo. banc 1978), the court adopted the foregoing formula in remittitur cases, citing *Ricketts* and other decisions, and stated:

" * * * The ultimate test is what fairly and reasonably compensates plaintiff for the injuries sustained."

See also: *Helming v. Dulle*, 441 S.W.2d 350, 354 (Mo.1969).

As was noted in the case of *Gathright v. Pendegraft*, 433 S.W.2d 299, 317[32] (Mo.1968), while an appellate court has the authority to declare as a matter of law that a verdict exceeds a maximum amount which the evidence will support "the assessment of damages is primarily the function of the jury, whose duty it is to award such sum as reasonably will compensate for the injuries sustained." To this might be added that where the matter of alleged excessiveness is charged at the trial level, the trial judge with the advantages enjoyed as a trial participant must pass upon the matter. In the cases before this Court, although the charge (among others) of excessiveness was made in the defendant's motion for a new trial, the trial court did not disturb the verdicts and overruled the motion.

Applying these principles to the facts in this record favorable to the amount of the verdicts, the following facts appear:

The impact of the collision threw both Mrs. Baugh's and Mrs. McGowan's head, neck and shoulders backward and then forward, and caused Mrs. Baugh's head to bump against the steering wheel.

*Injuries and damage sustained by Mrs. McGowan:*

McGowan was 55 years of age at the time of the trial November 14, 1977 and had a life expectancy of 24.78 years. She was a working waitress at the time of the accident with no history of previous injuries or disabilities, and was capable of and did carry 35–pound food trays overhead in her occupation. Following the accident, she was vomiting and later that day went with Mrs. Baugh to the K. U. Medical Center where she was X–rayed, given a prescription and a neck collar, and instructed on how to use hot packs. She went to the Medical Center on two additional occasions. Thereafter, McGowan was under the care of Dr. Szabados, who recommended physical therapy, which McGowan received upon 8 or 10 occasions. The doctor also recommended traction.

McGowan returned to work 6 weeks after the collision, but because of her inability to lift or carry heavy trays, she requested and received a transfer to another restaurant where the work was lighter. Before the accident, she worked 5 or 6 10–hour days per week, but at the time of the trial she was working only 4 five–hour days on "slow" nights. Since the collision she has been unable to drive an automobile due to a stiff neck; was unable to vacuum floors, clean windows, launder clothes, and had great difficulty sleeping, all of which work she was capable of doing and did do before the collision.

Dr. Szabados testified that her pre–existing arthritic condition was aggravated and rendered symptomatic by the accident. He also testified that her neck movement was limited in degree; she had myofacial ligamentous injuries of the neck; tenderness in the occipital muscle attachment; pain along the base of the neck; was unable to raise her arms completely overhead; had difficulty bringing her arms in back of her waist; and, her lower three cervical vertebrae ankylosed. McGowan's lost wages to the date of the trial were $4,200.00. She had paid the following medical bills: $83.00 to K. U. Medical Center; $152.00 for prescriptions; $36.00 for X–rays; $131.00 to a physical therapist; $236.30 doctors' bills. These special damages total $4,838.30.

*Injuries and damage sustained by Mrs. Baugh:*

Baugh was 51 years old at the time of the accident and had never injured her shoul-

ders, head or neck prior thereto. Later in the day of the collision, she developed terrific headaches and nausea, and had pain in her neck, back and right arm. She also went to the University of Kansas Medical Center on that date and was X–rayed, given prescriptions and a neck collar and released. She made a number of return visits to the Medical Center. Baugh also came under the care of Dr. Szabados and was X–rayed and examined by him. He recommended physical therapy for her and she had a total of 12 to 14 physical therapy treatments. Dr. Szabados testified that she had received ligamentous and musculature injury to her neck, shoulder and back, and that the neck injury and condition would bother her the rest of her life. The condition had become chronic. She suffered from constant headaches for which she took medication daily; had an extremely painful shoulder; was unable to raise her arms over her head straight up without pain; and had a general resulting physical weakness in her right upper extremities. At the time of the trial she was still using home traction to her neck for 30 to 40 minutes daily.

Baugh was also a waitress prior to the collision, lifting heavy food trays above her head. She returned to work four weeks after the collision, but was unable to perform functions she was previously capable of doing, including carrying food trays over her head. Her employer, manager of the restaurant, testified that before the accident she was a good, steady employee without the physical shortcomings which she suffered after the accident. Her lost wages were in the neighborhood of $2100.00. Her medical expenses were: $122.00 for physical therapist; $61.30 K. U. Medical Center; $122.30 prescriptions; $36.00 X–rays; $177.00 Dr. Szabados, her special damages thus reaching, at time of trial, $2,618.60.

Upon the facet of uniformity, which under the present state of Missouri law is still a factor, reference is made to *Terrell v. Bailey Limestone Co., Inc.*, 575 S.W.2d 775, 779, 780[4] (Mo.App.1978), where the nature of the injuries and the losses incident thereto are very similar to both of the cases here under consideration and· in which a judgment was affirmed for $25,000.00.

 After careful study of this transcript and record of the authorities cited and disclosed by independent research, this Court has concluded that both the judgments in the McGowan and Baugh cases are within the limits of the test and are reasonable compensation for the injuries sustained. They are not excessive and will not be disturbed. Appellant's Point II is ruled against him.

The judgments are affirmed.

All concur.