**Donat PISHA and Earlene Pisha,**
**Appellants,**

v.

**SEARS ROEBUCK & COMPANY,**
**Respondent.**

**No. KCD 26037.**

Missouri Court of Appeals,
Kansas City District.

June 4, 1973.

Gordon, Adams, Niewald & Risjord, Kansas City, for appellants.

John R. Gibson, John W. Cowden, Morrison, Hecker, Cozad, Morrison § Curtis, Kansas City, for respondent.

Before DIXON, C. J., and SWOFFORD and SHANGLER, JJ.

PER CURIAM.

Donat Pisha and Earlene Pisha, husband and wife, hereinafter referred to as Pishas, filed suit against Sears Roebuck & Company, hereinafter referred to as Sears.

Pishas' suit against Sears contained three counts. Count one sought damages to their real and personal property resulting from a fire on the theory of negligence, count two sought actual and punitive damages for conversion of their refrigerator-freezer, and, alternatively, count three sought damages to their real and personal property resulting from fire on the theory of strict liability. Pishas submitted their case to the jury under counts two (conversion) and three (strict liability). The jury returned a verdict in favor of Pishas on count two and awarded them $380.00 actual damages and $8,000.00 punitive damages, but as to count three, the jury returned a verdict in favor of Sears.

In the lower court, Sears, with respect to the verdict and judgment in favor of Pishas on count two, moved for judgment in accordance with its motion for a directed verdict at the close of all the evidence, or, in the alternative, for a new trial. Pishas moved for a new trial with respect to the judgment in favor of Sears on count three.

The lower court overruled Pishas' motion for a new trial respecting count three, but sustained Sears' motion for a new trial respecting count two, unless Pishas voluntarily remitted $4,000.00 of the $8,000.00 awarded as punitive damages. Pishas refused to remit and the order granting Sears a new trial as to count two stood.

Pishas appeal from the lower court's order granting Sears a new trial as to count two, and from the judgment in favor of Sears as to count three.

Pishas claim the lower court erred in awarding Sears a new trial as to count two (conversion) because of their refusal to voluntarily remit $4,000.00 of the $8,000.00 punitive damages awarded, and, further erred with respect to count three, in admitting, over their objection, the opinion of Sears' expert witness as to the cause of the fire on the theory that it was not a "proper subject of expert testimony".

The issues joined, plus the somewhat unusual joinder of conversion and damage to property predicated on strict liability, necessitate delineation of certain evidence.

Pishas purchased a new refrigerator-freezer from Sears which subsequently malfunctioned. At Pishas' request, Sears took the unit into its service shop for repairs. During the repair interim, Sears

provided Pishas with a "loaner refrigerator". Sears, prior to delivery of the "loaner refrigerator", required Mrs. Pisha to sign a document acknowledging receipt of the "loaner refrigerator" and agreeing to pay Sears the value thereof if she failed to return it in its original condition, ordinary wear from normal use excepted. Completion of repairs to Pishas' refrigerator-freezer, as per Sears' original estimate of time, was delayed better than three and one-half weeks.

Mrs. Pisha testified that on the evening of Thursday, September 19, 1968, the "loaner refrigerator", which was still being used due to the delay in completing repairs to Pishas' refrigerator-freezer, was malfunctioning. This was reported to Sears. Sears advised Mrs. Pisha that all service personnel had left for the day, and, further, her refrigerator-freezer was on a delivery truck and would be delivered the next morning (Friday) or the following Monday. Mrs. Pisha, by manipulating the circuit breaker in the main wiring panel of her home, succeeded in getting the "loaner refrigerator" to again function.

The following morning (Friday) Mrs. Pisha prepared breakfast for her husband, using their electric range and electric toaster. According to her testimony, she unplugged the electric toaster and placed it in a cabinet after breakfast had been prepared. Thereupon, Mrs. Pisha returned to bed and was later awakened by the smell of smoke. As Mrs. Pisha left the house, she testified she looked into the kitchen and could tell the fire was in the north part of the kitchen (the "loaner refrigerator" was in the northeast corner of the kitchen, backed against the north wall). While outside the house she looked through the kitchen window and testified she observed the "loaner refrigerator" on fire with fire coming from the bottom portion thereof.

Alfred Benberg, a consulting engineer, was called as a witness by Pishas. According to his testimony, he inspected and photographed the damaged premises the day after the fire, at which time he observed a pattern of burning indicating a general flash of fire against the wall behind the "loaner refrigerator". Pictures taken by Benberg and introduced into evidence by Pishas show cabinets and counterspace along the west wall of the kitchen, and further show extensive fire damage to the referred to cabinets and counterspace, as well as extensive fire damage to the east wall of the kitchen. Additionally, Benberg testified that he removed the "loaner refrigerator" from the north wall, and observed the rubber electric plug jammed against the metal refrigeration coils (all on the back side of the "loaner refrigerator"), which created a "short" between the plug and the coils. With this groundwork laid, Benberg testified that, in his opinion, the "short" accounted for the "loaner refrigerator's" malfunction the night before the fire and caused the fire.

Clifford Dotson, fire chief of the City of Gladstone at the time of the fire, was called as a witness by Sears. He arrived at the scene while the fire was in progress. Testimony was elicited at length from Dotson showing his qualification as an expert fire investigator. In addition to supervising the fighting of the fire, the following day he conducted two investigations of the burned area and its contents. His investigation disclosed an electric toaster and coffee pot sitting on the kitchen countertop. During his investigation he pulled the "loaner refrigerator" from the wall and unplugged it. He found nothing unusual about the plug of the "loaner refrigerator" that indicated a short. Over objection, Dotson testified that, in his opinion, the fire was caused by the electric toaster.

Following the fire, Mrs. Pisha requested Sears to return the Pishas' refrigerator-freezer. Sears advised Mrs. Pisha that their refrigerator-freezer would be returned to them when they made arrangements to pay for the "loaner refrigerator" that had been destroyed in the fire. Mrs. Pisha indicated to Sears that arrangements

would be made to pay for the "loaner refrigerator", but arrangements were not made and Pishas made no firm commitment to pay. Sears did not deliver the Pishas' refrigerator-freezer and suit was filed.

First, attention is focused on Pishas' assertion that the lower court erred in ordering remittitur respecting the award of punitive damages, $8,000.00 to $4,000.00, as a condition to overruling Sears' motion for a new trial on count two (conversion).

■ Pishas cite a number of authorities addressing themselves to the propriety of awarding punitive damages and applicable standards of review attendant thereto. Such authorities are but partially relevant. The situation is not one where an appellate court is being initially asked to determine whether the jury's award of punitive damages to Pishas was or was not excessive. In such a situation the evidence must be construed in the light most favorable to Pishas. The true posture of the issue on appeal is whether *"under all the evidence,* the trial court could, *in the exercise of its discretion, reasonably require a remittitur as a condition to overruling the motion of defendant . . . for new trial."* (Emphasis added.) Wicker v. Knox Glass Associates, Inc., 362 Mo. 614, 621, 242 S.W.2d 566, 570 (1951). See also Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S.W.2d 426 (1951).

■ Granting a new trial on the ground of excessiveness of the verdict is equivalent to granting a new trial on the ground that the verdict is against the weight of the evidence. Both involve the power of the trial court to weigh the evidence. Steuernagel v. St. Louis Public Service Co., supra; Mitchell v. Pla-Mor, Inc., 361 Mo. 946, 237 S.W.2d 189 (Mo. 1951). The outer perimeter of discretion possessed by trial courts is best exemplified when a new trial is granted on the ground the verdict is against the weight of the evidence. As stated in Lupkey v. Weldon, 419 S.W.2d 91, 93 (Mo. banc 1967), "We have long recognized the superior ability of a trial court to perform this function, and we will not substitute our judgment for that of the trial court when it grants a new trial on the ground the jury verdict is against the weight of the evidence." The discretion possessed by the trial court to grant a new trial unless Pishas remitted a portion of the punitive damages awarded was substantially concomitant with its discretion to have granted a new trial on the ground that the jury's verdict was against the weight of the evidence.

■ In reviewing the propriety of the trial court's action in granting a new trial on count two (conversion) unless Pishas remitted a portion of the punitive damages awarded, the evidence must be viewed in the light most favorable to the trial court's action. When so viewed, if the evidence "does afford reasonable and substantial support for the trial court's order of remittitur, then there could be no abuse of discretion and the trial court's action must be sustained." Steuernagel v. St. Louis Public Service Co., supra. An important function of the trial court, having observed the proceedings and heard the evidence, was to determine whether the amount of punitive damages awarded by the jury, when questioned, was comportable with the evidence. Steuernagel v. St. Louis Public Service Co., supra.

■ Malice, either legal or actual, is a necessary prerequisite to the return of punitive damages, since their springing purpose is to punish and deter the guilty actor. Beggs v. Universal C. I. T. Credit Corporation, 409 S.W.2d 719 (Mo.1966); Davis v. Nash Central Motors, a corporation, 332 S.W.2d 475 (Mo.App.1960); Peak v. W. T. Grant Company, 386 S.W.2d 685 (Mo. App.1964).

■ Necessarily, the amount of punitive damages to effect punishment and determent can not be measured with mathematical preciseness. But this does not

mean that juries have carte blanche in awarding punitive damages. Attendant circumstances, including mitigating as well as aggravating circumstances, must be taken into consideration, and the amount must be equated to the degree of malice, criminality or contumely characterizing the actor's conduct for which punishment or determent is deemed necessary. Beggs v. Universal C. I. T. Credit Corporation, supra; State ex rel. St. Joseph Belt Ry. Co. v. Shain et al., 341 Mo. 733, 108 S.W.2d 351 (1937). Pishas would obfuscate all considerations as to the amount of punitive damage save Sears' net worth which was shown to be $3,708,279,355.00. Net worth is but one of many considerations. Beggs v. Universal C. I. T. Credit Corporation, supra.

■ The record does not reveal any outrageous, flagitious, hateful or surreptitious conduct on the part of Sears directed toward Pishas. Sears did not harass, dun or threaten Pishas. There was no invasion of Pishas' home or privacy by Sears.

Weighing all the evidence in the light most favorable to the trial court's action in granting a new trial if Pishas failed to remit a portion of the punitive damages awarded, "reasonable and substantial support" existed for it doing so and no abuse of discretion is disclosed.

■ Second Pishas contend the trial court erred in permitting Sears' witness, Clifford Dotson, to testify that in his opinion the fire was caused by the electric toaster. Pishas do not question Dotson's qualifications, rather they predicate their contention on the sole basis the cause of the fire was not the proper subject of expert testimony. This contention is not well taken. Pishas elicited from their own expert, Alfred Benberg, his opinion that the "loaner refrigerator" caused the fire. At first blush, the doctrine of "curative ad-missibility" would appear to have classic applicability and control as to Pishas' contention that the cause of the fire was not the proper subject of expert testimony. See Sigman v. Kopp, 378 S.W.2d 544 (Mo.1964). However, as hereinafter demonstrated, the cause of the fire was a proper subject of expert testimony, and no occasion arises to dispose of Pishas' second contention on the basis of the "curative admissibility" doctrine. The place where the fire started and the cause of the fire were both "hotly" contested issues in the case. It is well settled in Missouri that expert testimony as to the cause of fires is proper when the attendant evidence is not so simple or undisputed as to preclude the opinion from having probative value. Capra v. Phillips Investment Company, 302 S.W.2d 924 (Mo. banc 1957); McConnell v. Pic-Walsh Freight Company, 432 S.W.2d 292 (Mo.1968). It is equally well settled that the admission or exclusion of expert testimony rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. State v. Barker, 490 S.W.2d 263 (Mo.App.1973).

The trial court properly overruled Pishas' objection to Dotson's opinion as to the cause of the fire.

■ In its brief Sears alleges error on the part of the trial court in giving Instruction No. 6, which submitted the issue of punitive damages. Sears took no appeal and its allegation of error will not be considered. Wagner v. Wagner, 465 S.W.2d 655 (Mo.App.1971).

The order of the trial court granting a new trial on count two is affirmed, and the cause is remanded for a new trial as to count two. Judgment for defendant on count three is affirmed.

All concur.