Thomas D. LARABEE, et al.,
Respondents,

v.

CITY OF KANSAS CITY, Missouri, and
Jack E. Murnan, Appellants.

No. WD 35586.

Missouri Court of Appeals,
Western District.

Jan. 15, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied
March 5, 1985.

Application for Transfer Sustained
April 30, 1985.

Case Retransferred Aug. 22, 1985.

Court of Appeals Opinion Readopted
Oct. 22, 1985.

Richard N. Ward, City Atty., Dennis E. Lee, Asst. City Atty., Kansas City, for appellants.

Gregory O. Grounds, Ennis, Browne & Jensen, Kansas City, for respondents.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

LOWENSTEIN, Presiding Judge.

The Larabees' owned and operated a plumbing business in Kansas City, Missouri. Their three-story frame building was situated south of and adjacent to a warehouse which caught on fire in the early morning hours of April 27, 1981. A fire captain died as a result of one of the warehouse walls collapsing. However, by 3:08 a.m. the fire was listed as "under control."

About 7:00 a.m. Fire Chief Conninghton arrived on the scene to supervise the "mop-up" or "overhaul" operation. There was no danger of the fire spreading or creating a danger to the Larabee building. Conninghton decided to knock down the remaining warehouse walls to facilitate the mop-up and so contacted appellant, Jack Murnan, the City's dangerous building representative. Conninghton specifically told Murnan to knock the north wall of the warehouse building back into its basement and away from the Larabee building. The two walls not adjacent to the Larabee building were to be knocked outward. After giving Murnan these instructions the chief left. Murnan obtained bids for the demolition job. However, Murnan told the selected demolition company to knock all the remaining walls *outward.* Thus, the north brick wall of the warehouse was knocked directly onto the Larabees' frame building, destroying it and damaging the contents.

The jury awarded the Larabees $102,-628.00 as against the city and Murnan. About $65,000.00 of this sum was for total damage to the building and the rest for vehicles and personal property buried by the demolition action. The trial court conditionally granted a new trial, unless the Larabees filed remittitur of $50,000.00 on the assessment of damages for the building. The Larabees complied, and the trial court entered its judgment for $52,628.00. It is from this judgment that both parties appeal. The City and Murnan allege no liability because of immunity, while the Larabees contest the remittitur.

■ The appellants' first contention is that the city was protected by sovereign immunity. While it is true the legislature reinstated such sovereign or governmental tort immunity as existed at common law when it enacted § 537.600, RSMo 1978, the statute still preserves the governmental/proprietary distinction. *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864, 868 (Mo. banc 1983). This distinction provides that municipalities are not liable for injuries which occur in the negligent performance of a governmental function, but are liable for injuries which occur in the negligent performance of a proprietary function. *Davis v. City of St. Louis,* 612 S.W.2d 812, 814 (Mo.App.1981). The question here is whether the demolition of the warehouse walls was a governmental or proprietary function.

The city points to Missouri cases that hold firefighting is a governmental function. *Newson v. City of Kansas City,* 606 S.W.2d 487, 489 (Mo.App.1980); *Heller v. Sedalia,* 53 Mo. 159 (1873); *McKenna v. City of St. Louis,* 6 Mo.App. 320 (1878). Firefighting itself is "performed for the common good of all" and therefore a governmental duty. *Davis v. City of St. Louis, supra.* But another line of cases

indicate that demolition is a proprietary function. In *Rothenhoefer v. City of St. Louis*, 410 S.W.2d 73 (Mo.1966) the Missouri Supreme Court held that destruction of a particular property without necessity and where the property is not in fact dangerous to the public, may be "at the peril of the municipality." *Id.* at 75.

■ Kansas City presented no evidence the Larabees' property presented a public danger, nor was there evidence that it was *necessary* to destroy the Larabee building in order to tear down the warehouse walls. To the contrary, the fire chief testified he specifically ordered the north wall to be knocked *inward* to prevent damage to the adjacent frame building. The negligent act in question cannot be protected by labeling it part of the firefighting function. While under some circumstances, damage of this type would be unavoidable, here there was no evidence of emergency. The character of the act performed was of a special benefit to the municipality, and not in performance of a duty to the community—it was a proprietary act so the city may not escape liability. The trial court was correct in denying a judgment NOV on the basis of sovereign immunity.

■ The appellants' second contention is that Jack Murnan was protected by official immunity. Although sovereign immunity immunizes government agencies from tort liability, it is not applicable to the individual public officials who act as agents of the state. Although there has been some confusion, the tests of sovereign immunity and official immunity are mutually exclusive. *See Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 296 (fn. 14) (Mo. App.1983). Thus, the question here is not whether the function was governmental or proprietary, but whether the Murnan's act was discretionary or ministerial. A public officer or employee who negligently performs a discretionary duty will be protected from tort liability, but the same person can be held liable for negligently performing a ministerial duty. *Jackson v. Wilson*, 581 S.W.2d 39, 42 (Mo.App.1979); *Grant v.*

*Fletcher*, 564 S.W.2d 944, 945–46 (Mo.App. 1978).

■ Ministerial functions are those that must be performed in a prescribed manner and without regard to personal judgment as to the propriety of that function. Discretionary functions require the exercise of reason in their performance and go to the essence of governing. *Newson v. City of Kansas City, supra.* Appellants argue that Murnan retained some discretion in *how* to best accomplish what he had been instructed to do. While not demeaning the skill required for demolition, this court cannot see any discretion involved. When an employee is told to crush a wall *inward*, there seems to be only one way to accomplish that task. The trial court did not err in overruling appellant's motion for judgment NOV because of official immunity.

The appellants' last contention is that Larabees' instruction on damages was given in error. The instruction, following M.A.I. 4.02 (1980 Rev.), read:

If you find in favor of plaintiffs, then you must award plaintiffs such sum as you find from the evidence to be the difference between the fair market value of the building and contents located at 916 Brooklyn before they were damaged and their fair market value after they were damaged.

The phrase "fair market value" as used in this instruction means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so.

■ Appellants' cite *Moore v. Woolbright*, 670 S.W.2d 190, 192 (Mo.App.1984) for the proposition that where damage is the result of multiple causation, the damage instruction should require the jury by its findings to separate or apportion the damages directly resulting from the negligence of the defendants. It is not disputed that the Larabee property sustained some fire and water damage prior to the negligent demolition. Thus, it would appear

that an issue of multiple causation exists, and MAI 4.02 should be modified.

However, as this court pointed out in *Kelso v. C.B.K. Agronomics, Inc.*, 510 S.W.2d 709, 726 (Mo.App.1974), before reversible error could be predicated upon the giving of MAI 4.02 in this case, the appellants must show it was a misdirection under *all the evidence and the other instructions*. While the damage instruction here submitted may not here be ideal, the precise damages for which the defendant may be held liable was explained to the jury in other instructions. *Goodwin v. S.J. Groves & Sons Company*, 525 S.W.2d 577, 581 (Mo.App.1975). In the present case the verdict director limited the damage to that incurred *after* the demolition. The instructions, read as a whole, cannot be said to have created a misdirection to the jury requiring a reversal.

■ In a cross-appeal the Larabees countered that the order of remittitur for $50,-000.00 was excessive because there was substantial evidence in the record to support the jury's full verdict of $102,628.00. Even though the Larabees consented to the remittitur, under Rule 78.10, this does not preclude them from asserting on appeal that the amount of remittitur was excessive when the other party initiated the appeal on other grounds. This rule effective January 1, 1981, is as follows:

> Consenting to a remittitur as a condition to the denial of a new trial does not preclude the consenting party from asserting on appeal that the amount of the verdict was proper or that the amount of the remittitur is excessive. A party consenting to a remittitur may not initiate the appeal on that ground but may raise the same on the other party's appeal.

■ The general rule for the measure of damages for tortious injury to real property is the difference in fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount. *Casada v. Hamby Excavating Co. Inc.*, 575 S.W.2d 851, 858 (Mo.App.1978). The *only* evidence produced at trial on the fair market value

of Larabees' property came from Larabee himself. The appellants presented no evidence as to value. On direct examination Mr. Larabee testified that after the fire and water damage but before the demolition, his building was worth about $70,-000.00. On cross-examination he testified the building was worth $65,000.00 before demolition and nothing afterward, and, the building was purchased some eight months prior to the fire for $7,500.00 and that he invested another $4,900.00 in improvements.

■ When faced with a motion for new trial on the basis of an excessive verdict, the trial court has three alternatives. One is to affirm the verdict. The second is to find the verdict so grossly excessive as to indicate bias and prejudice, for which the only remedy is a new trial. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 614–615 (Mo. banc 1977). The third alternative is to require remittitur if the verdict is excessive because "the jury made an honest mistake in weighing the evidence as to the nature and extent of the injury and in fixing the damages and awarded for comparable injuries under the rule of uniformity." *Nussbaum v. Kansas City Stock Yards Co. of Maine*, 359 S.W.2d 335, 341 (Mo.1962).

■ In the present case the trial court followed the third alternative. The question then is whether the jury made such a mistake as to give the trial court discretion to order a remittitur. A jury verdict is deemed excessive if it exceeds the amount claimed in a party's petition and the amount supported by evidence. *C & M Developers, Inc. v. Berbiglia, Inc.*, 585 S.W.2d 176, 188 (Mo.App.1979). However, such is not the case here. Nor was any mathematical miscalculation made by the jury that needed correcting. The rule of uniformity has no application here. The order of remittitur was unnecessary to correct a jury award of double the amount requested by the plaintiff. *Lewis v. Envirotech Corp.*, 674 S.W.2d 105, 113 (Mo.App. 1984).

As stated in *Casada, supra,* at 857, an owner of property is ordinarily qualified to give his opinion as to the value of his own property even though he is not a real estate expert. Here, as in *Casada,* there was no demonstration either by cross-examination or other means that plaintiffs had used an erroneous method of valuing their property. The opinion of Larabee was substantial evidence and it was for the jury to determine the weight and credibility to be given it. It is clear from the jury's verdict of $65,000.00 for the building that they found Larabees' opinion credible. Since the verdict was within the range prayed for, was supported by the evidence, and was not the product of any mistake or miscalculation, this was not a case where remittitur was appropriate. What makes disposition of this point so difficult is the paucity of evidence on fair market value of the building prior to demolition. "Fair market value" is essentially the price the property would bring by sale to a willing owner from a buyer who is also under no compulsion to buy. *Bridgeforth v. Proffitt,* 490 S.W.2d 416, 424 (Mo.App. 1973). Larabee testified as to the $65,-000.00 figure being this value without further explanation as to value of the ground. The city's only incursion as to "value" was on cross-examination and resulted in the cost of the building and improvements being $12,000.00. Cost is not to be equated with "fair market value." *Henderson v. Smith,* 643 S.W.2d 882, 884 (Mo.App.1982). The city did nothing on cross-examination to show the owner's opinion as to fair market value was based upon an improper standard. *Henderson, supra,* at 884, nor did it so establish the statement of the owner to be a guess or so unsure so as to diminish that original testimony. *P & S Leasing Co. v. Ray Smith Ford, Inc.,* 553 S.W.2d 733 (Mo.App.1977). Because of the thin record the judge was put in a restricted position to afford any cure to a verdict he felt excessive. The only real tool here was to grant a motion for new trial on the discretionary basis of the verdict being against the weight of the evidence (there being no evidence as to value if the owner's

evidence of fair market value were not accepted). A jury has the duty to assess and award reasonable damages. *McGowan v. Hoffman,* 609 S.W.2d 160, 167 (Mo. App.1980). Here, if the jury owners valuation as the only evidence of value, with the cost *not* being the lower figure of fair market value, remittitur in any amount is not appropriate as the verdict was not excessive since it was within or the same as the pleading and the evidence. Alternatively, if the total cost figure of $12,000.00 was to be equated with fair market value as the lower figure, with $65,000.00 as the top amount, remittitur would be appropriate then if remittitur were considered available. The $15,000.00 figure arrived at by the trial court was unsupported by the evidence. Even within the scope of review favorable to the trial judge's figure, *P & S, supra,* at 734, a reversal would still result. That portion of the order ordering remittitur is reversed.

The judgment is affirmed in all respects as to all parties, but that portion dealing with remittitur is reversed and the cause is remanded for the sole purpose of entering judgment in the amount of the verdict of $102,628.00.

SOMERVILLE, Judge, dissenting.

I respectfully dissent from that portion of the majority opinion setting aside the order of remittitur entered by the trial court and reinstating the verdict returned by the jury. My reasons for parting company with the majority are fully explicated in *Pisha v. Sears Roebuck & Company,* 496 S.W.2d 280, 284 (Mo.App.1973).

The judgment below should be affirmed —period.